IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Randall Nelson,                       Case No. 19-24458-beh

              Debtor.         Chapter 13

In re:

    Wilfredo Ramos,                   Case No. 20-21169-beh

              Debtor.         Chapter 13

**DECISION AND ORDER ON DEBTORS' REQUESTS TO MODIFY THEIR CONFIRMED CHAPTER 13 PLANS**

Does 11 U.S.C. § 1329(c) foreclose the ability of a Chapter 13 debtor to modify his confirmed plan to alter the plan payment amount while maintaining an extended plan period previously approved under (now-expired) 11 U.S.C. § 1329(d)? Debtors Randall Nelson and Wilfredo Ramos have confirmed Chapter 13 plans with payment periods of 84 months and 76 months, respectively. Whether they may modify their plans again while leaving those extended payment periods in place is a question of statutory interpretation.

## FACTUAL BACKGROUND

**A.    Randall Nelson**

Debtor Randall Nelson filed a voluntary petition and Chapter 13 plan on May 6, 2019. Case No. 19-24458, ECF Nos. 1 and 2. The Court confirmed his amended 60-month plan on February 21, 2020. ECF No. 39. The debtor filed a proposed modified plan on January 13, 2021, which the Court confirmed on February 17, 2021. ECF No. 59. The modified plan took advantage of then-existing 11 U.S.C. § 1329(d), a provision of the Coronavirus Aid, Relief, and

Economic Security Act ("CARES Act"), Pub. L. 116-136, 134 Stat. 281 (March 27, 2020), and extended the plan payment period to 84 months.

On March 28, 2022—25 months after the debtor's plan was first confirmed—the Chapter 13 trustee filed a motion to dismiss Mr. Nelson's case, based on failure to make plan payments and to supply a copy of his 2020 tax returns. ECF No. 61. The debtor objected and noted his ability to make/catch up on payments due to anticipated receipt of rents. The parties reached a resolution, which included provision for a further modified plan. The Court entered an order on April 25, 2022, denying the trustee's motion to dismiss and, among other things, noting that the debtor had to file a modified plan no later than May 31, 2022.[1] ECF No. 67.

When the modified plan was not filed by that deadline, the trustee certified default, but later withdrew her certification after the debtor filed a modified plan and budget. *See* ECF Nos. 69, 72, 73, and 74. The proposed modification sought to change only the payment amount in section 2.1 of the plan, requiring the debtor to make monthly payments to the trustee of $1,838. The modification further provided: "All remaining terms of the Chapter 13 Plan last confirmed on February 17, 2021 are unaffected." ECF No. 72, at 3. The trustee objected to this proposed modification on the basis that it did not provide for a feasible plan. ECF No. 78. The parties agreed to settle the trustee's objection on the condition that the debtor file a modified feasible plan by August 19, 2022, and the trustee submitted a proposed order imposing this requirement for the Court to sign. Thereafter the Court notified the debtor and trustee via docket entry: "Given that [the] text of s. 1329(c) provides that a court may not approve a [plan payment] period that expires after five years beyond the time the first payment was due, the Court will modify the proposed

---

[1] Given the parties' agreed resolution of the trustee's March 28, 2022 motion to dismiss, which included requiring the debtor to submit a plan modification—after the sunset of § 1329(d)—the Court should have called the question before entering its April 25 order. That oversight does not dilute the salience of the question as it relates to the parties' proposed resolution of the trustee's later objection to confirmation, *see infra*, by requiring a further plan modification by August 19, 2022, and pointedly, not requiring that any further modified plan include a payment term consistent with 11 U.S.C. § 1329(c).

order on the trustee's objection to confirmation by adding the phrase 'compliant with s. 1329(c)' unless the debtor requests a hearing on the matter within 10 business days." The debtor requested a hearing.

Both counsel for the debtor and counsel for the Chapter 13 trustee presented their views on the issue identified by the Court. Namely, the parties recognized that Congress did not amend the text of § 1329(c) (or § 1329(d)) to address whether debtors with existing CARES Act payment period extensions may modify any term of their plans while keeping a previously-confirmed payment period of more than 60 months. After some discussion, the Court allowed counsel for debtor and the trustee to submit letter briefs addressing their positions.

**B.     Wilfredo Ramos**

Debtor Wilfredo Ramos filed his initial Chapter 13 plan on February 28, 2020. *See* Case No. 20-21169, ECF No. 9. The Court confirmed the plan, as amended, on March 1, 2021. *See* ECF Nos. 75 and 80. Shortly thereafter, mortgage lender Deutsche Bank National Trust Company filed a motion for relief from the automatic stay based on the debtor's failure to make post-petition mortgage payments. The Court denied the motion in an order dated June 2, 2021. In doing so, the Court imposed a six-month "doomsday" period during which the debtor was required to make timely mortgage payments or risk Deutsche Bank being granted immediate relief from the automatic stay, and also allowed the bank to file a supplemental claim in the amount of $9,605.60. *See* ECF No. 90. To accommodate the bank's supplemental claim without having to increase his monthly plan payment amount, the debtor elected to extend his plan payment period to 76 months pursuant to 11 U.S.C. § 1329(d). ECF No. 92. The Court confirmed the modified plan on July 20, 2021. ECF No. 94.

Several months later, Deutsche Bank filed an affidavit of default. After a series of hearings on the matter, the parties stipulated to allowing Deutsche Bank to file another supplemental claim for $2,111.52. ECF No. 130. The

Chapter 13 trustee thereafter filed a motion to dismiss for failure to make payments necessary to ensure timely plan completion. ECF No. 132. At this point, the debtor was in the 16th month of his confirmed plan. The trustee withdrew his motion after the debtor filed a further modified plan on July 11, 2022. *See* ECF Nos. 134 and 140. This latest proposed modification would provide for payment of the most recent supplemental claim by increasing the debtor's monthly plan payment from $468 to $520. ECF No. 134. Though no one objected to the proposed plan, the Court held a hearing to consider whether the proposed modification violates 11 U.S.C. § 1329(c), as it would require the debtor to make (increased) plan payments for a period that exceeds five years. After conclusion of additional briefing by counsel for the debtor, the Court took the matter under advisement.

## ARGUMENTS OF THE PARTIES

These cases present the same question: Does 11 U.S.C. § 1329(c) foreclose the ability of Chapter 13 debtors to modify their plans in some respect while maintaining an extended payment period previously confirmed under now-expired 11 U.S.C. § 1329(d)?

Debtor Nelson contends that imposing the 60-month limitation of § 1329(c) on debtors wishing to maintain their CARES Act extended periods would yield an absurd result, citing *In re Goodrich*, 587 B.R. 829, 841 (Bankr. D. Vt. 2018) (granting reconsideration to review interpretation of a BAPCPA provision after eleven years of analysis by other courts, and considering the statute's text, context, and purpose). Attempting to demonstrate an absurdity, he hypothesizes a debtor in month 65 of an 84-month plan who needs to modify his payment amount to maintain feasibility. *See* Case No. 19-24458, ECF No. 87. That hypothetical debtor, he argues, would be unable to modify at all if bound by § 1329(c), forcing him to make the difficult choice of allowing his case to be dismissed or to remain in an "unfeasible plan that is destined for failure[.]" *Id.* To avoid such a choice, he points to *In re Mercer,* where a bankruptcy court allowed debtors to modify the payment amount of their

CARES Act plan and maintain their extended payment period, despite the expiration of § 1329(d). *See* 640 B.R. 577, 581 (Bankr. D. Colo. 2022).

Debtor Ramos likewise relies on *Mercer* as authority for allowing him to modify his plan in the manner proposed. *See* Case No. 20-21169, ECF No. 146. He also directs the Court to *In re Carter*, 638 B.R. 379 (Bankr. N.D. Ill. 2022), for the proposition that a plan can be modified to run longer than 60 months. *See* 638 B.R. at 398 ("[Section 1329(c)] is satisfied so long as the modification itself does not expressly alter the plan term to one longer than 60 months, even if the effect of the modification is that a plan may run longer than 60 months.") (citing *Germeraad v. Powers,* 826 F.3d 962, 968 (7th Cir. 2016)). *See* ECF No. 145. *Carter*, however, does not help the debtor, because Mr. Ramos's proposed modification would result in a plan that, by its express terms, provides for a payment period exceeding the 60-month limit of section 1329(c). *See* 638 B.R. at 398 (["[T]he general proposition taken by the court from [*Germeraad*] is more broad: Even after the 60th month of a plan, a court may modify a plan—even if the resulting plan will result by definition in a plan longer than 60 months—so long as the court does not extend the plan term itself beyond 60 months."); *see also Germeraad,* 826 F.3d at 970–71 ("[Section 1329] contains three general limits on the bankruptcy court's power to approve the request. First, modification is allowed only if it will modify the plan in one of the ways specified in § 1329(a)(1)–(4). Second, a modification must comport with the provisions of the Code listed in § 1329(b)(1). *Finally, . . . a modification may not result in a plan providing for payments over a term that is longer than the period specified in § 1329(c) . . . .*") (emphasis added).

Mr. Ramos points out that his extended plan period already is in place and he does not seek further modification of that period, therefore, he argues, he is not asking the Court to "'approve a period that expires after five years [after the time that the first payment under the original confirmed plan was due].'" ECF No. 146, at 2. He asserts that if the Court were to deny a request to modify only his payment amount, that denial would serve as a retroactive

denial of his prior, permitted, payment-period extension under § 1329(d). He notes that the Chapter 13 trustees in this district agree that further modifications of payment amounts would not run afoul of § 1329(c). *Id.*

For their part, the trustees argue that restricting debtors with plan period extensions previously approved under § 1329(d) to a 60-month plan on a subsequent modification thwarts the Bankruptcy Code's overall purpose of aiding Chapter 13 debtors to complete their cases. According to the trustees, because § 1329(d) was enacted to allow debtors a longer period to complete their cases, Congress could not have intended now to force those debtors—many of whom remain adversely affected by the COVID-19 pandemic—to revert back to a 60-month plan period. Finally, they contend that §§ 1329(c) and 1329(d) are conflicting provisions that must be harmonized. *See* Case No. 19-24458-beh, ECF No. 88 (incorporating by reference the trustee's letter brief submitted in *In re Lewis*, Case No. 18-26550-beh, ECF No. 134) (cautioning against construing statutory provisions in ways that would lead to absurd results, citing *In re Goodrich,* 587 B.R. at 841, and warning against a statutory construction that would fail to give both provisions full effect, citing *In re Plunkett,* 89 B.R. 776, 782 (Bankr. E.D. Wis. 1988) (concluding that 11 U.S.C. § 541(d) does not prevent a trustee from invoking his strong-arm powers under 11 U.S.C. § 544(a)(3) and reading § 541(d) to avoid making the provision "redundant and mere surplusage")).

## DISCUSSION

Since 1978, 11 U.S.C. § 1329(c) has read:

> A plan modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, *but the court may not approve a period that expires after five years after such time.*

11 U.S.C. § 1329(c) (emphasis added). The maximum plan period provided by subsection (c) was expanded between 2020 and 2022 by 11 U.S.C. § 1329(d)(2).

The latter, temporary provision allowed qualifying debtors to modify their confirmed Chapter 13 plans to provide for payments up to two additional years:

> A plan modified under paragraph (1) may not provide for payments over a period that expires more than *7 years after the time that the first payment under the original confirmed plan was due.*

11 U.S.C. § 1329(d)(2) (emphasis added). Subsection (d) became effective on March 27, 2020, shortly after the COVID-19 outbreak took hold in this country. From the first, Congress established that this option to prolong plan-length would be available for a limited time. After one extension, the provision was stricken as of March 27, 2022.[2]

With the sunset of § 1329(d), debtors like Mr. Nelson and Mr. Ramos—those who previously obtained CARES Act extensions of their plan periods and now seek to modify another aspect of their plans (like the amount of monthly plan payments) while retaining the extended payment periods—are left without a clear path to confirmation.

One bankruptcy court decision offers mild support for the debtors' view that they may modify their plans as proposed. In *In re Mercer*, a Colorado court allowed debtors who had previously modified their plan to provide for payments over a period of seven years under section 1329(d) to further modify their plan to adjust the payment amount to creditors, while keeping the plan duration at seven years despite the sunset of § 1329(d). The court explained: "It is this Court's view that any plan extension beyond five years that this Court approved before the sunset date should remain in effect despite a subsequent modification to the plan after the sunset date." 640 B.R. at 581. The *Mercer* court supplied no analysis for its view.

---

[2] Subsection (d) was added by the CARES Act on March 27, 2020 to permit extension of a plan up to a total of seven years for debtors experiencing a material financial hardship due to COVID-19 and applied to any case for which a Chapter 13 plan had been confirmed before the enactment date. Congress originally enacted a one-year sunset for this subsection, *see* Pub. L. No. 116-136, §§ 1113(b)(2)(A)(iii) and 1113(b)(2)(B), but then delayed the sunset until March 27, 2022, and expanded eligibility by affording the payment period extension to debtors like Mr. Ramos, whose plans were confirmed before March 27, 2021. *See COVID-19 Bankruptcy Relief Extension Act of 2021*, Pub. L. No. 117-5, 135 Stat 249 (Mar. 27, 2021). This decision refers collectively to each of these plans as "CARES Act" plans.

Another bankruptcy court, in two separate cases decided by the same judge, reached conclusions about the ability to modify a plan post-expiration of § 1329(d), relying on plain statutory text. In *In re Sykes*, 638 B.R. 578 (Bankr. E.D. Mich. 2022), the bankruptcy court denied a post-confirmation request to modify a debtor's plan by extending its term from 60 to 65 months. The request was filed several weeks before March 27, 2022, but the hearing on confirmation fell several days after March 27, meaning § 1329(d) was no longer in effect. Moreover, that district's local rules provided that a proposed post-confirmation plan modification did not become effective until the court entered the confirmation order.[3] For those reasons, the bankruptcy court denied confirmation and similarly denied reconsideration.

In *In re Bohinski*, 638 B.R. 870 (Bankr. E.D. Mich. 2022), the debtor filed a proposed post-confirmation plan modification several days before March 27, 2022. The proposed modification would have changed the Chapter 13 plan period from 64 to 67 months. In mid-April, after the time for objection had passed, the court denied confirmation. It concluded that because § 1329(d) had been stricken, confirming a plan period of 67 months would be contrary to law. The *Bohinski* court reminded that the maximum length of a modified plan is the five-year period described in § 1329(c). *Id.* at 871. Implicitly at least, the *Bohinski* reasoning suggests that the court would not confirm a post-CARES Act plan modification where the changed term is one other than plan duration but the plan duration remains extended beyond 60 months.

---

[3] *See also* 11 U.S.C. § 1329(d)(1)(B) (" . . . the plan may be modified upon the request of the debtor if— . . . the modification is approved after notice and a hearing"); *compare* 11 U.S.C. § 1329(b)(2) ("The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved."); *Germeraad v. Powers*, 826 F.3d 962, 969 (7th Cir. 2016) (section 1329(b)(2) means that the modification is effective, i.e., that the plan is modified, on the date the party requests modification of the plan, unless the court later disapproves it); *In re Mercer*, 640 B.R. at 581 ("It is hard for this Court to imagine what other meaning to give to [section § 1329(d)(1)(B)'s requirement that the modification must be approved] than to hold that § 1329(d) motions to modify are not effective until they are approved. Holding otherwise would render this element superfluous. So, the Court must acknowledge that § 1329(d), unlike § 1329(b)(2), requires approval and not merely a filing that is not later disapproved.").

*Bohinski*, rather than *Mercer*, better adheres to the plain text of § 1329(c), which provides that "[a] *plan* modified under this section"—not *a modification* under this section—"may not provide for payments over a period that expires after [five years]." 11 U.S.C. § 1329(c) (emphasis added). Although the debtors would like the Court to cabin the applicability of section 1329(c) to the discrete terms of the proposed modification at issue, the statutory text is not so limited. *Compare Germeraad*, 826 F.3d at 971 ("[A] modification may not result in a plan providing for payments over a term that is longer than the period specified in § 1329(c) . . . ."). For the following reasons, this Court makes express what the *Bohinski* court implied, concluding that a request to modify a confirmed plan that expressly results in a plan payment period exceeding 60 months fails to comply with 11 U.S.C. § 1329 and cannot be granted.

**A.   Section 1329(c) is not ambiguous as applied to the debtors.**

While apparently acknowledging that the text of § 1329(c) is plain, the debtors and Chapter 13 trustees contend that § 1329(c) is ambiguous at least as applied to debtors like Mr. Nelson and Mr. Ramos, asserting that Congress could not have intended the sunsetting of § 1329(d) combined with the ongoing application of § 1329(c) to foreclose further plan modifications for debtors wishing to retain their CARES-Act-extended payment periods.

One problem with this ambiguity/conflict argument, which necessarily compares now-stricken § 1329(d) with the continuing § 1329(c), is that statutory interpretation cases most often analyze whether operation of two *co-existing* statutory provisions creates ambiguity. *See, e.g., Goodrich*, 587 B.R. at 838–39 (reconsidering interpretation of BAPCPA provision and canvassing other courts' methodology); *Plunkett*, 89 B.R. at 781–82 (reading Code sections 541(d) and 544(a)(3)—both co-existing—to reconcile alleged conflict). Here, §§ 1329(d) and (c) no longer co-exist. Only § 1329(c) is operative. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) ("The starting point in discerning congressional intent is the existing statutory text, and not the predecessor statutes. It is well established that 'when the statute's language is plain, the

sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.' So we begin with the present statute.") (internal citations omitted).

The converse situation does occur—courts may attempt to interpret current Code provisions by considering prior bankruptcy statutes. *See, e.g., Goodrich*, 587 B.R. at 840 n.11 ("In efforts to decipher the meaning of newly added provisions, three of the four BAPCPA decisions considered pre-BAPCPA bankruptcy statutes and practice.") (citing *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 244 (2010); *Hamilton v. Lanning*, 560 U.S. 505, 515–17 (2010); *Hall v. United States*, 566 U.S. 506, 513–14 (2012)). But the lineage is not direct here; § 1329(c) pre-existed § 1329(d) and continues intact after sunset of the latter.[4]

Assuming § 1329(c) is ambiguous here, the Court could look to legislative history, though it should do so with caution. *See, e.g., Lamie*, 540 U.S. at 536 (instructing that courts should "avoid the pitfalls that plague too quick a turn to the more controversial realm of legislative history"); *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2256 (2022) ("This Court has long disfavored arguments based on alleged legislative motives," recognizing that inquiries into such motives "are a hazardous matter.") (citing *United States v. O'Brien*, 391 U.S. 367, 383 (1968)). While the parties have not cited it, there is some legislative history of the COVID-19 Bankruptcy Relief Extension Act of

---

[4] The debtors' and trustees' unintended-consequences argument mirrors the argument made in a case where the debtor sought to extend her plan under the CARES Act, but because the original plan was not confirmed before the March 27, 2020 effective date of § 1329(d)(2), the debtor could not take advantage of the temporary extension window Congress created. *See, e.g., In re Robinson*, Case No. 19-22498-beh, 2020 WL 7234031, at *2 (Bankr. E.D. Wis. Dec. 8, 2020) ("The debtor argues that the statutory language produces a result here that is 'at odds with the manifest intent of the legislature.' Counsel asserts '[t]he debtor was clearly the type of individual that Congress intended to provide relief to, and it would be inequitable to deny her this relief due to a literal reading of the statutory language essentially putting form over function.'") (internal citations omitted). The *Robinson* court acknowledged that while the United States Supreme Court has recognized there can be interpretive exceptions to a plain language read of statutory text, such an exception should be reserved for the "rare case," *see id.* at *3 (citing *Ron Pair Enterprises*, 489 U.S. 235, 242 (1989)). Neither the debtors nor the Chapter 13 trustees argue that either of the debtor's situations here is a "rare case."

2021. That history illumines why the accommodation of § 1329(d) was not permanent, but finite:

> Mr. NADLER. Madam Speaker, H.R. 1651, the COVID-19 Bankruptcy Relief extension Act of 2021, is bipartisan legislation to *temporarily extend*, until March 27, 2022, the COVID-19 bankruptcy relief provisions enacted as part of the CARES Act in the December 2020 omnibus appropriations bill.
>
> Since the bankruptcy provisions of the CARES Act will expire next week, it is urgent for Congress to ensure that families and small businesses do not lose access to these economic lifelines.
>
> These provisions were enacted last year to provide critical relief to families and small businesses forced into bankruptcy because of the ongoing pandemic. For example, they . . . protect individuals and creditors alike from the effects of the pandemic derailing the court-ordered repayment plans that promise a way out of chapter 13 bankruptcy.
>
> . . .
>
> *Extending* these necessary protections *until March of next year* will provide much-needed certainty that the bankruptcy system will remain responsive to debtors and creditors alike *during this extraordinarily disruptive crisis*.
>
> . . .
>
> Mr. ISSA. . . . Madam Speaker, this pandemic, everyone knows, has uprooted lives and caused untold destruction to families, to workers, and to small businesses. And many see the partisan behavior as destructive during this time, and they often do not see the bipartisan behavior.
>
> Today's extension, H.R. 1651, is an example of bipartisan behavior on behalf of the American people. Repeated and lengthy government shutdowns in response to the pandemic have devastated the ability of millions to work, pay bills, and support their families, and keep their small businesses afloat.
>
> . . .
>
> In 2020, Congress passed five bipartisan COVID relief packages. The CARES Act allowed a variety of *temporary relief measures* for families and small business. *When it was passed, we believed that, in fact, once the vaccine was available, that we would be able to put this behind us. But today, when over 10 percent of Americans have received a vaccine, we now know that the road to full recovery is longer ahead of us even after we begin going to work.*

> So allowing . . . debtors to file chapter 13 to modify their payment plans are only some of the critical items that the CARES Act did. Today we are making sure these will continue *until March of 2022*.
>
> This bill also extends through 2022 bankruptcy relief provisions included in the December 2020 COVID relief package. This extension will provide individuals and businesses with certainty and simplicity *as they look at an economic recovery that, although it is underway, may be long*.

167 Cong. Rec. H1389–90 (daily ed. March 16, 2021) (emphasis added).

These statements reflect an intent that the accommodation of § 1329(d) be temporary. They describe a rationale that limited, and not permanent, relief was required because vaccines and other measures would be part of the nation's economic recovery, notwithstanding the recovery process could be long. *See also In re Ritter*, 626 B.R. 35, 40–41 (Bankr. C.D. Cal. 2021) ("Congress passed § 1329(d) in March 2020 in order to allow debtors experiencing financial hardship due to COVID to modify their plans. . . . At the same time, Congress enacted sweeping provisions providing for forbearance on federally insured personal mortgage loans. . . . This combination was intended to keep debtors in their homes and prevent massive foreclosures during a health crisis where the public had been instructed to stay at home to reduce the spread of the disease.").

Moreover, there is no dispute that Congress took some action after the passage of the CARES Act, and even after the sunset of § 1329(d), to remedy new or remaining problems that later came to light. For example, Congress enacted (now-repealed) 11 U.S.C. § 1328(i) in December 2020, months after the CARES Act and passage of § 1329(d), to address the existing issue of mortgage forbearances during the pandemic. As the bankruptcy court in *In re Ritter* explained:

> [Section 1329(d)], however, did not adequately address the situation where a debtor had complied with all requirements of the plan and was ready for a discharge but could not keep up with mortgage payments due to COVID-19 related financial setbacks. . . . Section 1328(i) allows debtors who have suffered COVID-19 related financial distress to still obtain a discharge even

> though they have obtained a forbearance agreement or loan
> modification for their residential mortgage.

626 B.R. at 41. *See also Bankruptcy Threshold Adjustments and Technical Corrections Act,* Pub. L. 117-151, 136 Stat 1298 (June 21, 2022) (amending 11 U.S.C. § 1182 retroactively to extend the debt limit increase of $7,500,000 under the CARES Act for Subchapter V debtors through 2024, and fixing an apparent mistake by Congress in the CARES Act regarding the eligibility of affiliates of a corporation to file a Subchapter V case). But Congress did not act to amend § 1329(c) so as to separately accommodate existing CARES Act plans.

Well before the COVID crisis arose, courts agreed that § 1329 did not allow an unlimited range of post-confirmation modifications. *See In re Witkowski,* 16 F.3d 739, 745 (7th Cir. 1994) ("modifications under § 1329 are not limitless . . . . Rather, by the express terms of the statute, modifications are only allowed in three limited circumstances [now four circumstances after amendment in 2005]" described in § 1329(a)). With the sunset of § 1329(d), the only Code provision addressing length of payment periods for modified plans is § 1329(c). Congress made a policy choice in § 1329(c) when it set 60 months as the outside duration for a Chapter 13 payment period.

> The legislative history of the Bankruptcy Code indicates that
> Congress was unhappy with practices that had developed in
> certain parts of the country under Chapter 13's predecessor that
> had resulted in debtors remaining under court-supervised
> repayment plans for seven to ten years, which Congress
> characterized as being close to indentured servitude.

*In re Black,* 292 B.R. 693, 700 (B.A.P. 10th Cir. 2003) (citing Congressional Report). Congress temporarily altered that policy choice for a 24-month period, when the country's debtors and creditors were abruptly affected by the COVID-19 outbreak.

Even if the parties' argument strikes one as a practical solution, numerous courts have cautioned against judicial curing of a seeming congressional inadvertence. For example, in *Stearns v. Pratola (In re Pratola),* 589 B.R. 779 (N.D. Ill. 2018), the district court described the arguments

presented to the bankruptcy court as to whether student loan debt was part of the § 109(e) calculus for Chapter 13 eligibility. The *Pratola* court then explained how adherence to plain text must take precedence, notwithstanding compelling policy considerations:

> After noting that ineligibility under § 109(e) is usually cause for dismissal or conversion of a Chapter 13 case but is not an absolute bar, the Bankruptcy Court concluded that it was without clear direction from either the Bankruptcy Code or case law as to whether cause for dismissal under § 1307(c) exists in this situation. *Id.* at 7. Based on this perceived ambiguity, the Bankruptcy Court turned to legislative history and policy considerations regarding educational debt to determine whether Debtor's case should be dismissed. The Bankruptcy Court concluded that based on the history surrounding the debt limits' enactment, Congress could not have intended to exclude someone like Debtor, an otherwise eligible individual exceeding § 109(e)'s unsecured debt limit solely because of educational debt, from Chapter 13 relief. . . .
>
> Based on these considerations, the Bankruptcy Court held that there was no cause for dismissal of Debtor's Chapter 13 case under § 1307(c). The Bankruptcy Court specifically noted that "[d]ismissing [Debtor's] case would not advance the Congressional intent behind the debt limits, and doing so would hinder the principal purpose of the Bankruptcy Code—to grant a 'fresh start' to the honest but unfortunate debtor." *Id.* at 12 (citation omitted). . . .
>
> . . .
>
> The Court is not unsympathetic to the policy concerns raised by the Bankruptcy Court and highlighted by Debtor . . . regarding individuals with large amounts of educational debt, but the power to create such an exception to § 109(e) lies with Congress rather than the courts. . . . . Courts must enforce statutes as written; they cannot "rewrite the statute that Congress has enacted." *Puerto Rico*, 136 S. Ct. at 1949 (quoting *Dodd v. United States*, 545 U.S. 353, 359, 125 S. Ct. 2478, 162 L.Ed.2d 343 (2005)). Creating an exception to Chapter 13's eligibility requirements effectively rewrites the statute, substituting a discretionary substantive standard for the bright-line rule established by Congress.
>
> . . .
>
>  . . . Under the plain terms of § 109(e), Debtor exceeds the statutory debt limit and so is ineligible to proceed as a Chapter 13; the nature of his debt is irrelevant. By taking its nature into account and considering potential policy reasons why Congress would not want to

include such debt in § 109(e)'s debt limits, the Bankruptcy Court
interpreted the statute in a way that contravened its plain text.

589 B.R. at 783, 790–91.

Another bankruptcy court adhered to Seventh Circuit guidance when plain statutory text conflicts with a practitioner's or trial court's sense of expediency: "The Seventh Circuit has dispatched a clear message . . . that courts must not engage in judicial legislation, holding that a court of equity does not have 'free floating discretion to redistribute rights in accordance with its personal views of justice and fairness.'" *In re Nieves*, 246 B.R. 866, 872–73 (Bankr. E.D. Wis. 2000) (quoting *Matter of Chicago, Milwaukee, St. Paul & Pacific Railroad*, 791 F.2d 524 (7th Cir. 1986)).

Moreover, application of the construction canon to "avoid absurd results" has been narrowed. *See In re University of Wisconsin Oshkosh Foundation, Inc.*, 586 B.R. 458, 463 (Bankr. E.D. Wis. 2018), citing *Jaskolski v. Daniels*, 427 F.3d 456, 462 (7th Cir. 2005). The *Jaskolski* court explained:

> What Daniels labels "absurd" results are nothing but the rough cuts inevitable with decision by rule. . . . Today the anti-absurdity canon is linguistic rather than substantive. It deals with texts that don't scan as written and thus need repair work, rather than with statutes that seem poor fits for the task at hand. In other words, the modern decisions draw a line between poor exposition and benighted substantive choice; the latter is left alone, because what judges deem a "correction" or "fix" is from another perspective a deliberate interference with the legislative power to choose what makes for a good rule. Admit the propriety of "fixing mistakes" and you allow a general power to *identify* "mistakes," which means a privilege to make the real substantive decision.

427 F.3d at 462 (emphasis in original).

Here, the debtors and trustees ask the Court to "fix the mistake" of Congress and conclude that Congress, when it enacted § 1329(d) and its one-year extension, inadvertently failed to provide that CARES Act plans need not abide by § 1329(c) for any future modifications. But such a "fix" by this Court would deliberately interfere with the legislative power to fashion the rules. It would appropriate to the Court the power to substantively override Congress'

earlier determination that a 60-month maximum strikes the best balance against possible "indentured servitude." It would appropriate to the Court the power to veto what may well have been Congress' vision, in March 2020 and March 2021, that economic concessions to a pandemic must have some limitation, some concrete stopping point. Respecting the plain text of § 1329(c) as applied to modifications of CARES Act plans is not "hyperliteral and contrary to common sense," *see Ritter*, 626 B.R. at 42 (citing *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012)). Respecting and applying the plain text of § 1329(c) here recognizes that "Congress is very capable of limiting and conditioning the relief it fashions," *In re Gilbert*, 622 B.R. 859, 864 (Bankr. E.D. La. 2020),[5] and that Congress did not condition § 1329(c) following the sunset of § 1329(d).

In sum, the Court does not find the language of section 1329(c) ambiguous, either on its own or applied to debtors Nelson and Ramos. Because the statutory text is plain, the Court is bound to enforce it as written, and it cannot confirm Mr. Ramos's proposed modification, nor require Mr. Nelson to file a modified plan that would expressly require a payment period exceeding 60 months.

**B.    Subsection 1329(a), on its own, does not require confirmation of a modified plan.**

As a separate but related argument, the Chapter 13 trustees assert that failing to allow debtors like Mr. Nelson and Mr. Ramos to modify the payment amount in their extended-period plans would run afoul of § 1329(a), which states: "At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon the request of the debtor . . . to . . . ." This argument is not well-taken. While § 1329(a) permits a

---

[5] The court in *Gilbert* acknowledged that "modification under § 1329 has its limits, . . . [and] [i]f an unexpected event occurs late in the life of the debtor's plan, the debtor may be without recourse." 622 B.R. 859, 862 n.1 (Bankr. E.D. La. 2020). Although Mr. Ramos argues that a plain reading of § 1329(c) would work as a retroactive denial of his earlier plan-period extension under § 1329(d), applying the restrictions of § 1329(c) now does not equate to going back in time and denying the prior extension. Mr. Ramos's current request to modify his plan is a new development that now leaves him "with little recourse."

debtor to modify a confirmed plan to "increase or reduce the amount of payments on claims of a particular class provided for by the plan," subsection (a) is but one part of that statutory section. Another part, subsection (c), must be read in the conjunctive—that is, as a limitation—on modifications allowed by § 1329(a) because it refers to all modifications under this *section*:

> A plan modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

11 U.S.C. § 1329(c).

### C. Applying § 1329(c) to CARES Act plans does not result in a manifest injustice.

Finally, the Chapter 13 trustees contend that interpreting § 1329(c) to require a previously extended plan period to be reduced to 60 months would "result in a limitation constituting a manifest injustice." They cite *In re Gentry*, Case No. 15-20990-BEH, 2020 WL 2479662, at *4, 2020 Bankr. LEXIS 1265, at *11-12 (Bankr. E.D. Wis. May 13, 2020), generally for avoidance of manifest injustice.

This argument is undeveloped. The concept of "manifest injustice" discussed in *Gentry* concerned revisiting a prior decision that was clearly erroneous and where failure to correct it would result in a manifest injustice. The Chapter 13 trustees are not seeking reconsideration of a prior order, nor do they argue that any prior orders of the Court were clearly erroneous. Consequently, this argument is unavailing. *See Tyler v. Runyon*, 70 F.3d 458, 464 (7th Cir. 1995) ("[A] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point.") (internal quotation marks omitted).

## CONCLUSION AND ORDER

While the Court recognizes the frustration of these CARES Act debtors who seek further modifications after the temporary window of § 1329(d) has

closed, the plain language of that sunset provision and the plain language of on-going § 1329(c) require this Court to apply them as written.

Accordingly,

IT IS THEREFORE ORDERED that the Chapter 13 trustee's objection to confirmation of debtor Randall Nelson's June 13, 2022 request to modify his confirmed plan is sustained, with the requirement that the debtor file a modified feasible plan that complies with 11 U.S.C. § 1329(c), as interpreted by this Court, no later than **30 days from the date of this order.**

IT IS FURTHER ORDERED that debtor Wilfredo Ramos's July 11, 2022 request to modify his confirmed Chapter 13 plan is DENIED.

Dated: October 11, 2022

By the Court:

Beth E. Hanan
United States Bankruptcy Judge